IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ERDLY LANSFORD WILLIAMS<br>    Petitioner,<br>v.<br>RODERICK R. SOWERS, et al.<br>    Respondents. | *<br><br>*   CIVIL ACTION NO. RWT-06-1027<br><br>*<br>*** |

**MEMORANDUM OPINION**

Erdly Lansford Williams ("Petitioner") filed this 28 U.S.C. § 2254 attack on his 2002 convictions in the Circuit Court for Prince George's County, Maryland. (Paper Nos. 1 & 4). Respondents filed an Answer to the Petition. (Paper No. 16). After consideration of all pleadings and exhibits, the Court sees no need for an evidentiary hearing. See Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; see also 28 U.S.C. § 2254(d) & (e)(2). For reasons to follow, the Petition is hereby denied and dismissed with prejudice.

I.   PROCEDURAL HISTORY

Petitioner was arraigned before Circuit Court Judge Vincent J. Femia on June 21, 2001. (Paper No. 16, Ex. 1). His case was originally heard before a jury in November of 2001, but a mistrial was declared by Judge Graydon S. McKee on November 14, 2001. The key facts introduced at re-trial and reported by the Court of Special Appeals of Maryland are as follows:

> On September 28, 1997, at 1:30 a.m., Avon Abrahams met some friends, Paul, Garry, and Larry, at the Boys and Girls Club in Langley Park. He left the club within forty-five minutes because "what I expected was not going on." While walking to his automobile, a person known to Abrahams as "Sadle" approached, holding a gun, and asked: "Where is your friend Larry? I am going to finish him off tonight." As Abrahams started to put the "keys into the car," Sadle "[came] around from the side," "put [the gun] at the top of [Abraham's] head," and repeated: "I am going to hurt you and Larry tonight." When Abrahams started to walk away, Sadle fired the gun. According to Abrahams, he was shot twice, "one in the side" and "one

   on the head." He was transported to the Washington Hospital Center in Washington, D.C.
    Abrahams identified appellant as Sadle,[1] whom he had known for approximately three or four years, as the two had "played cards together."

(Paper No. 16, Ex. 8 at 1 & 2).

  A jury sitting in the Circuit Court for Prince George's County convicted Petitioner of attempted second degree murder, first and second degree assault, and use of a handgun in the commission of a felony or crime of violence on January 31, 2002.[2] (Id., Ex. 4 at Tr. 25-28). On March 8, 2002, Judge McKee sentenced Petitioner to a twenty-five year term on the attempted murder count and a consecutive five-year term, without parole, on the handgun count. (Id., Exs. 1 & 8).

  On appeal, Petitioner argued that the motions and trial courts erred in admitting photo array evidence presented via monochrome microfiche copies. (Id., Exs. 5-7). On January 8, 2003, the Court of Special Appeals of Maryland affirmed Petitioner's convictions. (Id., Ex. 8). Petitioner's request for further review was denied by the Court of Appeals of Maryland on June 13, 2003. (Id., Exs. 9-11).

  On November 11, 2003, Petitioner filed for post-conviction review in the Circuit Court for Prince George's County, raising nine grounds of ineffective assistance going to trial counsel's: (A) failure to interview and subpoena witnesses; (B) failure to advise Petitioner on her strategy for

---

[1] According to the record, Petitioner was identified by Abrahams through a series of photographs (not microfiche) presented to Abrahams by Maryland Park Police Detective Ivan Biss on October 14, 1997, while Abrahams was recuperating in the hospital. (Paper No.16, Ex. 3 at Tr. 134-141).

[2] Judge McKee merged the second degree assault into the first degree assault and the first degree assault into the attempted second degree murder conviction. (Paper No. 16, Ex. 4 at Tr. 29-30).

mounting a defense;[3] (C) improper discussion of Petitioner's comments with the prosecutor and the victim during plea negotiations and before trial; (D) failing to fully preserve issues that could have been raised on appeal; (E) refusal to comply with Petitioner's request to introduce into evidence Larry Edwin Rowe's part in the event; (F) failure to request an instruction on manslaughter after the State obtained instructions on first and second degree attempted murder; (G) failure to challenge the victim's inconsistent testimony in the first and second trials; (H) failure to investigate the case and to call any witnesses on Petitioner's behalf; and (I) failure to move for dismissal based upon pre-indictment delay.  (Paper No. 16, Exs. 12 & 13).

On April 11, 2005, Petitioner and his trial counsel testified before Circuit Court Judge C. Phillip Nichols at a post-conviction hearing.  (Id., Ex. 14).  On April 27, 2005, Judge Nichols denied post-conviction relief.  (Id., Ex. 15).  Petitioner's application for leave to appeal was summarily denied by the Court of Special Appeals of Maryland on December14, 2005.  (Id., Exs. 16 & 17).

Petitioner filed this § 2254 Petition alleging that his convictions should be overturned on the following Sixth Amendment ineffective assistance grounds:

Allegation One: trial counsel failed to investigate the case by interviewing numerous witnesses Petitioner believed could provide favorable and/or exculpatory information;[4]

Allegation Two: trial counsel failed to advise Petitioner about her strategy for mounting a defense as she only met briefly with Petitioner on several

---

[3] During the post-conviction argument hearing Petitioner's counsel argued that trial counsel failed to advise Petitioner about the defense and advised him not to testify. (Paper No. 16, Ex. 14 at Tr. 8).

[4] Petitioner references a "Ms. Bono," an alleged eyewitness to the crime whose statement was stipulated to and introduced at trial. (Paper No. 1).  It is believed that Petitioner is referring to Elizabeth Bonham.  (Paper No. 16, Ex. 3 at Tr. 174-175; Ex. 4 at Tr. 17).

occasions and never offered any reasonable advice related to the preparation and strategy of an affirmative defense of the charges;

Allegation Three:   trial counsel allowed the state to ask for jury instructions on both first and second degree attempted murder, without objection, and did not ask that the lesser-included offense of manslaughter be included in the instruction;

Allegation Four:   trial counsel failed to summon or subpoena any witnesses in Petitioner's interest;

Allegation Five:   trial counsel failed to fully preserve issues that could have been raised on appeal by not objecting to: the prosecutor's opening statement; the trial court's jury instruction on intent; the trial court's constructive amendments of the State's indictment; and the trial court's modified "<u>Allen</u>" charge; and

Allegation Six:   trial counsel failed to protect Petitioner's right to be present at all stages of trial proceedings as he was not permitted to participate in "any single [bench] conference."

(Paper Nos. 1 & 4).

## II   THRESHOLD CONSIDERATIONS

### A.   Exhaustion of State Remedies

There is no argument that the Petition is unexhausted under 28 U.S.C. § 2254(b) and (c).

### B.   Statute of Limitations

There is no contention that the Petition is time-barred pursuant to 28 U.S.C. §2244(d).

### C.   Procedural Default

Respondents argue that Petitioner's fifth ineffective assistance claim related to trial counsel's alleged failure to preserve numerous issues for appeal is procedurally defaulted, as the claim was only raised before the post-conviction court on a narrow ground related to challenges to the photo array identification made by victim Abrahams. (Paper No. 16, Answer at 23). Respondents further assert that Petitioner's sixth ineffective assistance claim going to trial counsel's purported failure

to protect his right to be present at bench conferences was never raised in any state court proceeding.[5]  (Paper No. 16, Answer at 25).

The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." Picard v. Connor, 404 U.S. 270, 276 (1971).  In Wainwright v. Sykes, 433 U.S. 72, 87 (1977), the Court held that consideration of a claim in a petition for habeas corpus can be barred by failure to comply with state procedural rules, unless the petitioner makes a showing of cause for the failure and prejudice resulting from the failure.  Thus, claims which have never been presented in the state courts—or claims which were not exhausted properly in the state courts —are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules.  See id.; see also Bassette v. Thompson, 915 F.2d 932, 936-37 (4th Cir. 1990); Collier v. Jones, 910 F.2d 770, 772-73 (11th Cir. 1990). This procedural bar applies when the state court has found procedural default regardless of whether it has also discussed the merits, as long as the court has explicitly invoked state procedural rule as the basis for its decision.  See Harris v. Reed, 489 U.S. 255, 264, n.10 (1989); Ashe v. Styles, 39 F.3d 80, 85-86 (4th Cir. 1994).[6]

The Court agrees with Respondents that Petitioner's fifth and sixth ineffective assistance of counsel claims are procedurally defaulted.  While Petitioner's post-conviction petition took issue with trial counsel's failure to preserve the photo array identification issue for appellate review, he

---

[5] A review of the trial transcript reveals that prior to voir dire Judge McKee asked defense counsel if she had told Petitioner of his right to come up and listen to all bench conversations. (Paper No. 16, Ex. 3 at Tr. 4).  Counsel indicated that "I did tell him this time and last year, to make sure he knows, he is welcome to hear anything we talk about."  (Id.).

[6] The Harris Court emphasized that a federal court has the responsibility to determine whether under the "plain statement rule" a state court in fact based its denial of relief on procedural grounds.  See Harris, 489 U.S. at 263.

did not raise the elements of allegation five (counsel's failure to object to and preserve for appeal claims related to the prosecutor's opening statement and trial court's instruction to the jury, amendment of the indictment, and charge to the jury when they appeared deadlocked) before the post-conviction court. Further, ground six was never raised in the Maryland courts.

The inquiry does not end here. Even where a claim has been procedurally defaulted, this Court must still consider whether it should reach the merits of the defaulted claim in order to prevent a fundamental miscarriage of justice. See Schlup v. Delo, 513 U.S. 298 (1995). The miscarriage of justice standard is directly linked to innocence. Id. at 320. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. Id. at 314. The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986); Schlup, supra. To meet this standard a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. Schlup, 513 U.S. at 327.[7]

Schlup observes that

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence —that was not presented at trial.

---

[7] Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. See Murray v. Carrier, 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Id.; see also Reid v. True, 349 F.3d 788, 806 (4th Cir. 2003). A petitioner who wishes to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted petitioner in light of the new evidence. See Buckner v. Polk, 453 F.3d 195, 199-200 (4th Cir. 2006).

Id. at 323; see also House v. Bell, 126 S.Ct. 2064, 2077-78 (2006).

Petitioner was afforded an opportunity to demonstrate the existence of cause for his failure to properly raise the aforementioned claims in the Maryland courts and the prejudice resulting from this failure. (Paper No. 17). He has failed to make the requisite showing under Schlup which would enable this Court to consider his two defaulted claims of ineffective assistance of trial counsel. Petitioner's procedurally defaulted claims are, therefore, foreclosed from federal habeas review.

## III.  STANDARD FOR § 2254 REVIEW

This Petition is to be decided under the amendments to 28 U.S.C. § 2254(d) and (e). See Woodford v. Garceau, 538 U.S. 202, 207 (2003); Beck v. Angelone, 261 F.3d 377, 380 n.3 (4th Cir. 2001). Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d) is a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curium). In Williams v. Taylor, 529 U.S. 362 (2000), Justice O'Connor explained that a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached

by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409-410; see also Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); Booth-el v. Nuth, 288 F.3d 571, 575 (4th Cir. 2002).

Further, federal courts must give great deference to a state court's factual findings. See Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

Petitioner claims that trial attorney Dorothy Gardner-Hodge was ineffective. This contention is governed by clearly established federal law-specifically by the Supreme Court's decision in Strickland v. Washington, 466 U.S. 668 (1984). To establish a claim of ineffective assistance of counsel under Strickland, a convicted defendant must demonstrate that his counsel's performance (1) "fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant. Id. at 688, 692. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process

that the trial cannot be relied on as having produced a just result." Id. at 686.  The ultimate focus of the Strickland inquiry is on the "fundamental fairness of the proceeding whose result is being challenged." Id. at 696.

In evaluating whether counsel's performance fell below an objective standard of reasonableness, a court must consider "whether counsel's assistance was reasonable considering all the circumstances." Id. at 688.  In its analysis, a court must be "highly deferential," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotations omitted); see also Humphries v. Ozmint, 397 F.3d 206, 234 (4th Cir.), cert. denied, 126 S.Ct. 128 (2005).  A court must not use the benefit of hindsight to second-guess strategic decisions made by counsel unless they were unreasonable.  Strickland, 466 U.S. at 690.

With regard to the prejudice prong of Strickland, a defendant need not demonstrate that the outcome of the proceeding would have been different, but rather that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  Even if counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." See Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

With these standards in mind, the Court will address the merits of Petitioner's remaining Sixth Amendment ineffective assistance of trial counsel claims.

IV.   ANALYSIS

Allegation One: Trial Counsel's Failure to Investigate the Case

Petitioner claims that Ms. Gardner-Hodge failed to investigate the case by interviewing numerous witnesses Petitioner believed could provide favorable and/or exculpatory information. On post-conviction review, Judge Nichols reviewed this claim and made the following statements:

> The petitioner alleges that trial counsel failed to interview many of the witnesses that were suggested by the petitioner and that she did not subpoena any witnesses on behalf of the petitioner. While petitioner said at the hearing that he wanted to subpoena Larry Rowe, this witness had died by the time of the second trial.
>
> Relief on this allegation is denied. The petitioner has not substantiated his claim that the witnesses possessed valuable evidence of that the witnesses were essential to a fair trial. *See Veney v. Warden*, 259 Md. 437, 451 (1970).

(Paper No. 16, Ex. 15 at 3).

Allegation Two: Trial Counsel's Failure to Advise Petitioner of her Trial Strategy

Petitioner asserts that trial counsel failed to advise him about her strategy for mounting a defense as she only met briefly with Petitioner on several occasions and never offered any reasonable advice related to the preparation and strategy to an affirmative defense of the charges. The post-conviction court stated:

> The petitioner alleges that trial counsel met with the petitioner only briefly on a few occasions, that she never offered any advice on how he could defend himself from the charges, and that her sole advice was to convince the petitioner not to testify on his own behalf.
>
> Relief is denied. This is a bald allegation and thus is insufficient to form any basis for relief. *Duff v. Warden*, 234 Md. 646, 648 (1964). We find that trial counsel's performance in this regard was not deficient and that trial counsel's consultation with petitioner was adequate. *See Slater v. Warden*, 241 Md. 668, 675 (1966).

(Paper No. 16, Ex. 15 at 3-4).

Allegation Three: Trial Counsel 's Failure to Request Jury Instruction on Manslaughter

10

Petitioner asserts that trial counsel Gardner-Hodge allowed the state to ask for jury instructions on both first and second degree attempted murder, without objection, and did not ask that the lesser included offense of manslaughter be included in the instruction. Judge Nichols dismissed this post-conviction claim following these observations:

> Trial counsel allowed the State to ask for jury instructions on both first and second degree murder, without objection. However, trial counsel did not ask that the lesser included offense of manslaughter be included in the instruction.
>
> The petitioner alleges that the jury should have been instructed on attempted voluntary manslaughter. The trial court instructed the jury on both attempted first degree murder and attempted second degree murder. The trial court did not instruct the jury on attempted voluntary manslaughter. The petitioner's trial counsel did not request that an attempted voluntary manslaughter instruction be given.
>
> Relief is denied. Trial counsel's actions were not deficient nor prejudiced the petitioner because there was no issue of justification generated by evidence of a perfect self-defense or an issue of mitigation generated by evidence of an imperfect self-defense in this case. Trial counsel did not render ineffective assistance of counsel in failing to request this jury instruction because the petitioner was not entitled to such jury instruction. *See Gilliam v. State*, 331 Md. 651, 668 (1993).

(Paper No. 16, Ex. 15 at 6-7).

<u>Allegation Four: Trial Counsel's Failure to Summon or Subpoena Witnesses</u>

Petitioner claims that trial counsel failed to summon or subpoena witnesses in his interest. At the post-conviction level, Petitioner claimed that counsel failed to call any witnesses to bolster his contention that he did not shoot Avon Abrahams. The post-conviction court ruled as follows:

> Relief is denied. This is a bald allegation and thus is insufficient to form any basis for relief. *Duff v. Warden*, 234 Md. 646, 648 (1964). The petitioner has not substantiated his claim that the witnesses possessed valuable evidence or that the witnesses were essential to a fair trial. *See Veney v. Warden*, 259 Md. 437, 451 (1970).

(Paper No. 16, Ex. 15 at 8).

After review of the record and post-conviction rulings, the Court finds no basis to overturn Judge Nichols's decisions.[8] The findings survive scrutiny under § 2254(d) and the Strickland standard as Petitioner has failed to demonstrate that defense counsel Dorothy Gardner-Hodge's representation was either deficient or prejudicial.

Petitioner complains that Ms. Gardner-Hodge did not investigate his case and call numerous witnesses to testify. He states these witnesses would have provided favorable and exculpatory information. He refers to three witnesses other than Larry Rowe, but does not identify them or discuss how their testimony would have aided his case.[9]

Petitioner's post-conviction testimony reflects that to the extent that he provided trial counsel with information regarding additional witnesses (an officer moonlighting at the Boys and Girls Club, other people with nicknames, a man by the name of "David," and a girl by the name of "Nicole"), the information was so vague rendering it difficult for counsel to identify or locate the majority of those witnesses. (Paper No. 16, Ex. 14 at Tr. 19 & 24-25). Moreover, Petitioner acknowledged that he never provided counsel with the names of any witnesses who could confirm that he did not shoot Abrahams. (Paper No. 16, Ex. 14 at Tr. 26 & 28). In addition, at the post-conviction hearing it was conceded by post-conviction counsel that the testimony of Larry Rowe would not have been

---

[8] On post-conviction review, counsel specifically argued these claims under the Strickland standard. (Paper No. 16, Ex. 14).

[9] Petitioner does complain that counsel was ineffective for not calling Ms. Bonham as a witness and for only allowing her stipulation to be admitted at trial. Again, he does not explain what additional information she would have provided in support of his defense. In any event, trial counsel testified that she proceeded with the stipulation because Ms. Bonham was reluctant to testify and the defense wanted to get specific things from her without any harmful information coming in on cross-examination. (Paper No. 16, Ex. 14 at Tr. 41). Counsel indicated that the stipulation accomplished the intended strategy by showing the jury that Ms. Bonham was in the area and saw a number of people who could have been the shooter, but were not questioned by the police. (Id.).

beneficial to Petitioner.[10]  (Id., Ex. 14 at Tr. 33).  Finally, Ms. Gardner-Hodge testified that she and her investigator did contact certain witnesses identified by Petitioner and obtained by her investigator, but none of those witnesses were particularly helpful because they could not corroborate Petitioner's defense that he was not at the scene when Abrahams was shot.  (Id., Ex. 14 at Tr. 38-43 & 50-51).

Petitioner also complains that trial counsel failed to keep him informed on her trial strategy.  He indicates, however, that Ms. Gardner-Hodge met with him on several occasions and the record shows that she communicated with Petitioner about his case.  (Id., Ex. 14 at Tr. 38-54).  Further, the post-conviction record shows that counsel questioned witnesses, gathered evidence, and actively pursued a misidentification defense.  (Id., Ex. 14 at Tr. 38-43).

Finally, Petitioner takes issue with trial counsel's failure to request a jury instruction on manslaughter.  An instruction on manslaughter, however, presupposes a defense of justification demonstrated by evidence of a perfect or imperfect self-defense.  The record is clear that the government's case was all through one witness: the victim.  The defense was premised on misidentification. (Id., Ex. 3 at Tr. 100-101, 151-152, & 162; Ex. 4 at Tr. 11-18; Ex. 14 at Tr. 42, & 51-52).  Consequently there was no basis for trial counsel to request an attempted involuntary manslaughter. Moreover, as correctly observed by Respondents, there has been no showing that the jury would have returned a different verdict has such an instruction been issued, in light of the evidence proffered at trial.

---

[10]    On post-conviction review Petitioner offered the theory that Larry Rowe's alleged background and connection to the victim regarding Rowe's alleged robberies of drug dealers should have been investigated by trial counsel. (Paper No. 16, Ex. 14).  To the extent that Petitioner raises the claim here, he has failed to show deficient performance and prejudice on the part of Ms. Gardner-Hodge. He has not demonstrated how such evidence could have been legally presented to the trial court and how it would have benefitted his defense in light of the victim's clear-cut identification.

IV. CONCLUSION

      In light of the foregoing rulings, this Petition for habeas corpus relief shall be denied and the case shall be dismissed with prejudice. A separate Order follows.


Date: 3/27/07                                          /s/
                                                             ROGER W. TITUS
                                                        UNITED STATES DISTRICT JUDGE